DAVEY TREE EXPERT CO. et al. v. VAN BILLIARD et al.

(District Court, E. D. Pennsylvania. February 4, 1918.)

No. 1601.

1. PATENTS ⬅328—VALIDITY AND INFRINGEMENT—PROCESS OF TREATING WOUNDS IN TREES.

The Davey patent, No. 890,968, for a process of treating a bruise or wound in a tree by cutting away any unsound or decayed wood and making a cavity which will drain itself, is valid and the process useful; also *held* infringed.

2. PATENTS ⬅328—VALIDITY AND INFRINGEMENT—PROCESS OF REINFORCING HOLLOW TREES.

The Davey patent, No. 958,478, for a process of reinforcing the trunks of trees having cavities therein extending to the exterior by building up within the cavity a filling in sections one above another, is invalid as to claim 1; it being too broad in view of the prior art. Claims 2, 3, 4, 5, 8, and 11 were not anticipated and disclosed invention and utility; also *held* infringed.

3. PATENTS ⬅312(1)—UTILITY OF INVENTION—PRESUMPTION AGAINST INFRINGER.

There is, as against an infringer, a strong presumption of utility in an invention which he has wrongfully appropriated for the purpose of benefiting himself.

4. PATENTS ⬅312(1)—INFRINGEMENT—INFERENCES FROM EVIDENCE.

That defendants in an infringement suit are ex-employés of complainant and familiar with the process of the patent, and are engaged in the same business, and that they fail to testify fairly and fully affords ground for an inference of controlling weight where the issue of infringement is fairly in doubt.

5. PATENTS ⬅290—SUITS FOR INFRINGEMENT—PARTIES.

The owners of a patent and an exclusive licensee thereunder may properly join as complainants in a suit for its infringement.

6. PATENTS ⬅321—INTERLOCUTORY DECREE.

On final hearing in an infringement suit, where bill of complaint was, as to one patent, sustainable except as to one claim, leave will be granted complainant to enter a disclaimer in the Patent Office and to file in court a certified copy thereof; interlocutory decree for accounting to be entered only upon such filing, and, in default of such disclaimer and filing, the bill to be dismissed as to that patent.

In Equity. Suit by the Davey Tree Expert Company, John Davey, Martin L. Davey, James A. Davey, and Wellington E. Davey against Rue J. Van Billiard and S. C. Dunkelberger. On final hearing. Decree for complainants ordered on condition.

Wm. A. Schnader, of Philadelphia, Pa., and C. P. Byrnes, of Pittsburgh, Pa., for complainants.

Arthur E. Paige, of Philadelphia, Pa., for defendants.

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

BRADFORD, District Judge. The Davey Tree Expert Company, a corporation of Ohio, hereinafter referred to as the company, John Davey, Martin L. Davey, James A. Davey and Wellington E. Davey, have brought their bill against Rue J. Van Billiard and S. C. Dunkelberger charging infringement of letters patent of the United States Nos. 890,968 and 958,478, and containing the usual prayers. No. 890,-968 is dated June 16, 1908, and was granted to John Davey, Martin L. Davey and James A. Davey, who, July 6, 1908, assigned an undivided fourth part of their right, title and interest under that patent to Wellington E. Davey. The four owners of the patent thereafter granted an exclusive oral license thereunder to the company; the title to the patent now being held by the grantors subject to the license. No. 958,478 is dated May 17, 1910, and was granted to Wellington E. Davey, who, September 15, 1910, assigned his entire right, title and interest thereunder to the company, which now owns that patent.

[1] No. 890,968 is for a "process of treating and dressing a bruise or wound in the trunk or live branch of a live tree." The description states:

"This invention relates to an improved process of treating and dressing a bruise or wound or any decayed or unsound spot in the trunk or live branch of a live tree. The primary object of this invention is to remove all decayed and unsound wood and foreign matter from the wounded or unsound portion of the trunk or branch, and so dress the cavity formed by removing the decayed or unsound wood and foreign matter that the wound will be readily healable by nature and further decay or harm to the tree prevented."

The charge of infringement is limited to claims 3, 4, 6 and 7. Each of those claims begins with the words:

"The herein disclosed process of treating and dressing a bruise or wound in the trunk or live branch of a live tree, consisting in the formation of a cavity in the trunk or branch by removing all decayed or unsound and foreign matter at the wounded spot in the trunk or branch."

The several claims in suit are differentiated from each other as follows: Claim 3 by adding to the above quoted words the following:

"and recessing the side walls and top wall of the cavity at the outer end of the cavity to form a channel extending from the bottom of the cavity at one side of the cavity to the top wall of the cavity, thence across the said top wall to the other side of the cavity, and thence downwardly to the bottom of the cavity, and then filling the cavity."

Claim 4 by adding to the words common to all of the claims in suit the following:

"and providing the side walls of the cavity at the outer end of the cavity with recesses extending from the bottom of the cavity upwardly to the top of the cavity, and then filling the cavity."

Claim 6 by adding to the said common words the following:

"and cutting away the bottom of the cavity at the outer end of the cavity to form a downwardly and outwardly sloping surface and providing the side walls of the cavity with recesses extending from the aforesaid surface upwardly a suitable distance, and then filling the cavity."

And claim 7 by adding to the said common words the following:

"and cutting away the bottom of the cavity at the outer end of the cavity to form a downwardly and outwardly sloping surface and recessing the side

walls and top wall of the cavity at the outer end of the cavity to form a channel extending from the aforesaid surface at one side of the cavity to the top wall of the cavity, thence across the said top wall to the other side of the cavity, and thence downwardly to the aforesaid surface, and then filling the cavity."

A distinguishing and essential feature in the process of each of the claims in suit is the formation at the outer end of the cavity of a duct or V-shaped groove or channel for carrying away water which would otherwise enter the cavity and injuriously affect the health of the tree. • The phrases "recessing" and "providing * * * with recesses" have relation to such groove or channel. It also appears from the description that in the patented process the bottom of the cavity is cut away at its outer end "so as to slope downwardly and outwardly." The evidence shows that the process is useful and has been employed with much success.

[2] No. 958,478 is for a "process of reinforcing trees." The description states:

"This invention relates to an improved process of reinforcing trees whose trunks have holes or cavities therein extending to the exterior and longitudinally of the trunks. The primary object of this invention is to reinforce the hollow portion of the trunk and to have the cavity filled in such a manner that a slight lateral yielding of the trunk to wind pressure against it will not result in injury to the filling. Another object is to compose the said filling of sections and to have adjacent filling-sections arranged the one above the other and to contour oppositely arranged end surfaces of the said adjacent sections to permit a slight lateral swaying of the upper of the said sections with the trunk independently of the lower of the said sections and thereby reduce to a minimum the liability of injury to the filling by wind pressure against the trunk. Another object is to render the upper of adjacent filling-sections independent of the lower of the said sections by supporting the said upper filling-section from the trunk independently of the said lower filling-section and thereby prevent the weight of the said upper filling-section bearing downwardly on the said lower filling-section. * * * Another object is to cushion adjacent end surfaces of adjacent filling-sections to accommodate some expansion of the said filling-sections toward each other without liability of cracking or injuring the said sections by a force or agency tending to result in such expansion. Another object is to prevent water being blown or driven by the wind or other force between adjacent sections of the filling at the joint formed between the said sections and to so form the said joint that any water or moisture which may have access to the oppositely arranged end surfaces of the said sections will be drained to the exterior of the trunk. Another object is to prevent any water which may obtain access to the under surface of the upper of adjacent filling-sections from entering the lower of the said filling-sections but instead to drain such water to the exterior of the trunk. Another object is to interpose a layer of compressible and elastic material between adjacent filling-sections and to interpose layers of oiled paper or the like between the said compressible and elastic layer and the said filling-sections and thereby avoid frictional adherence of the said compressible and elastic layer to the said filling-sections and render the joint formed between the said elastic and compressible layer and the said filling-sections waterproof so as to prevent any impregnation of the said compressible and elastic layer with moisture which may find access to the adjacent end surfaces of the said filling-sections. * * * The top or upper end surface of the lower of adjacent filling-sections is shaped or contoured concavely, and the bottom or lower end surface of the upper of the said filling-sections is shaped or contoured convexly. * * * A layer of waterproof material, such, for instance, as oiled paper which will not adhere to a layer of felt or other elastic and compressible material, and which is impervious to moisture, is laid on and covers the top or upper end surface of the lower of adjacent

filling-sections. A layer F of waterproof material, such, for instance, as oiled paper which will not adhere to a layer of felt or other elastic and compressible material, and which is impervious to moisture, covers the bottom or lower end surface of the upper of adjacent filling-sections. * * * By the process hereinbefore described it will be observed that the hollow portion A of the trunk of the tree is braced by a metal-reinforced concrete filling which occupies the cavity a in the said portion of the trunk, and that the upper of adjacent filling-sections is supported independently of the lower of the said filling-sections so as to prevent the weight of the upper of the said filling-sections bearing downwardly on the lower of the said filling-sections and so as to prevent the transmission of any strain tending to crack or injure one of the said filling-sections from being transmitted to the other of the said filling-sections and to accommodate the renewal of either of the said filling-sections without interfering with the adjacent metal-reinforced concrete section or sections of the filling. It will also be observed that the sectional filling accommodates a slight lateral swaying of the trunk by wind pressure against it without injury to the filling, and not unimportant is the curving or sloping of oppositely arranged end surfaces of adjacent filling-sections so as to drain any moisture having access thereto to the exterior of the trunk and to facilitate a slight lateral swaying of the upper of adjacent filling-sections with the trunk independently of the lower of the said filling-sections and thereby reduce to a minimum the liability of injury to the filling by wind pressure against the trunk. It will be seen also that the interposition of packing or elastic and compressible material between adjacent end surfaces of adjacent filling-sections to thereby cushion the said surfaces accommodates some expansion of the said filling-sections toward each other without liability of cracking or injuring the said sections by a force or agency tending to result in such expansion. It will also be observed that by the joint formed between adjacent filling-sections as hereinbefore described the blowing or driving of water by the wind or other force between the said sections at the said joint is substantially prevented and any water or moisture which may obtain access to the lower end surface of the upper of adjacent filling-sections is not only prevented from entering the lower of the said filling-sections but is drained to the exterior of the trunk. * * * It is obvious that the trunk of a tree upon swaying laterally will move farther at the upper of adjacent filling-sections than at the lower of the said filling-sections, and hence to render the sectional filling most suitable for the gradual increase in the movement of the trunk upwardly from the base of the trunk during any swaying of the trunk the upper of adjacent filling-sections is made shorter than the lower of the said filling-sections."

The charge of infringement is restricted to claims 1, 2, 3, 4, 5, 8 and 11, as follows:

"1. An improved process of reinforcing a tree having a cavity which is formed in the trunk of the tree and extends to the exterior and longitudinally of the trunk, said process comprising a building up within the cavity of a filling in sections one above another.

2. An improved process of reinforcing a tree having a cavity which is formed in the trunk of the tree and extends to the exterior and longitudinally of the trunk, said process comprising a building up within the cavity of a filling in sections one above another, and contouring the upper end surface of the lower of adjacent filling-sections to permit a slight lateral swaying of the upper of the said adjacent filling-sections with the trunk independent of the lower of the said adjacent filling-sections.

3. An improved process of reinforcing a tree having a cavity which is formed in the trunk of the tree and extends to the exterior and longitudinally of the trunk, said process comprising a building up within the cavity of a filling in sections one above another and supporting the upper of adjacent filling-sections independent of the lower of the said adjacent filling-sections.

4. An improved process of reinforcing a tree having a cavity which is formed in the trunk of the tree and extends to the exterior and longitudinally of the trunk, said process comprising a building up within the cavity of a filling

in sections one above another, and supporting adjacent filling-sections from the trunk independent of each other.

5. An improved process of reinforcing a tree having a cavity which is formed in the trunk of the tree, and extends to the exterior and longitudinally of the trunk, said process comprising a building up within the cavity of a filling in sections one above another, contouring the upper end surface of the lower of adjacent filling-sections to permit a slight lateral swaying of the upper ,of said adjacent filling-sections with the trunk independent of the lower of the said adjacent filling-sections and supporting said upper filling-section from the trunk independent of said lower filling-section.

8. An improved process of reinforcing a tree having a cavity which is formed in the trunk of the tree and extends to the exterior and longitudinally of the trunk, said process comprising a building up within the cavity of a filling in sections one above another, and cushioning oppositely arranged end surfaces of adjacent filling-sections.

11. An improved process of reinforcing a tree having a cavity which is formed in the trunk of the tree and extends to the exterior and longitudinally of the trunk, said process comprising a building up within the said cavity of a filling in sections one over another, and covering the top of the lower of adjacent filling-sections with compressible material before building up the lower of the said adjacent filling-sections."

[3] It is claimed by the defendants that the process of each of the patents in suit lacks utility and therefore was not patentable. A decided preponderance of the evidence is to the contrary, and shows that the process of No. 958,478, like that of No. 890,968, has been practiced with much success. And aside from other considerations there is as against an infringer a strong presumption of utility in an invention which he has wrongfully appropriated for the purpose of benefiting himself. Walk. Pat. § 85.

The proofs do not show anticipation of the two patents in suit or either of them by any other patent or patents. Nor do the other printed publications in evidence contain any matter anticipatory of the subject-matter of the several claims in suit with the exception of claim 1 of No. 958,478, nor, with that exception, does the evidence disclose any prior use of the subject-matter of any of the claims in suit, or that the prior art was such as to negative patentable invention. Claim 1 of the later patent, however, seeks broadly to cover the making within a cavity in the trunk of a tree for the purpose of reinforcing it of "a filling in sections one above another." In view of the prior art this claim is too broad to be valid.

[4] The evidence, direct and circumstantial, clearly establishes infringement by the defendants of the several claims in suit. Van Billiard, it is true, denies infringement; but he has been discredited by evasiveness, inconsistencies and self-contradictions in his testimony, and by his repudiation of sworn statements previously made. Dunkelberger failed to testify or be present at the hearing, and, according to the testimony of his co-defendant, although he had undertaken to attend and was notified by telegram when the hearing would be had, stated by letter that "he didn't think he would be here." Further, both of the defendants are ex-employees of the company and familiar with the patented process in question, and were engaged in the same line of business. Such circumstances it has been held in many cases afford ground for an inference of controlling weight, where the issue of infringement is fairly in doubt.

The defendants contend that the process of No. 958,478 requires a complete separation of the filling-sections from one another; that the defendants do not completely, but only partially, separate the sections, and therefore do not infringe; and, further that the company does not effect such complete separation, and has abandoned the patented process and practices that of the defendants. This contention, while specious, I regard as unsound. Undoubtedly it is impracticable to cut out and shape the layers of oiled or tarred paper covering and separating the ends of adjacent sections in such manner as exactly to fit the irregular interior surface of the tree cavity, and in so far as the separating layers between the sections fail to reach such interior surface the soft concrete when placed above the lower section will become attached to and integral with the concrete of the lower section. There is nothing in the patent claims or description, fairly construed, inconsistent with or negativing this. But wind or other force of sufficient strength to bend or deflect the trunk or branch containing the sectional filling will break asunder the comparatively thin concrete attachment between the upper and lower sections without injury to the filling, permitting it fully to perform its function as contemplated in the patent.

[5] It is urged by the defendants that the bill should be dismissed for multifariousness and misjoinder of parties. It clearly is not multifarious in any objectionable sense. Nor has there been a misjoinder. The company is the owner and holder of No. 958,478, and it has an exclusive license under No. 890,968, the four Daveys being the owners of the patent. The company as licensee was compelled to join the Daveys as owners. But though joined as owners the whole beneficial interest in this suit is vested in the company, and the presence of the Daveys as holders of the legal title to one of the patents cannot in any way complicate or embarrass the disposition of the case.

It is further urged by the defendants that under the provisions of a written contract between the company and its apprentices the latter, of whom the defendant Van Billiard was one, acquired a license by implication, after the expiration of the three year term of apprenticeship, to use the patented processes employed by the company. It was in substance provided in the contract that the apprentice should at all times during his term well and truly serve the company in its business of tree surgery; that he should not disclose any knowledge acquired by him through instructions received from the company; that he should not enter the employment of any person competing with the company in tree surgery; and that he should not engage in the treatment of trees so as to compete directly or indirectly with the company either individually or as agent of any other person, nor as a member of a partnership or a stockholder or employee of any corporation competing with the company "during the life of this agreement." It was further provided that the company should "teach and instruct said apprentice, or cause him to be taught and instructed in * * * tree surgery by the best way or means it can." I perceive nothing in the contract to justify the contention of the defendants. To sustain it would involve a forced and unnatural construction of the contract. Whatever license by implication resulted from the contract was limited to the term and purposes of the apprenticeship.

[6] For the reasons above given the bill of complaint, if a proper disclaimer be made by the complainant as to claim 1 of No. 958,478, must be sustained, except as to that claim, and the cross-bill dismissed. But this court having reached the conclusion that that claim is invalid it is proper before the taking of an account as to profits and damages under patent No..958,478, that a disclaimer as to claim 1 should be made before the entry of a decree for such accounting; and to that end leave is hereby granted to the complainant within thirty days from the date hereof to enter a disclaimer in the patent office and to file in this court a duly certified copy thereof. In default of such disclaimer and filing of such certified copy the bill will be dismissed as to patent No. 958,478. The entry of an interlocutory decree will be postponed until the expiration of the said period of thirty days, or until the filing in this court of a certified copy of such disclaimer, whichever shall first happen.